RIVER OAKS MOTOR HOMES, INC.,
Plaintiff,

v.

WINNEBAGO INDUSTRIES, INC.,
Defendant.

Civ. A. No. 73–H–474.

United States District Court,
S. D. Texas,
Houston Division.

Feb. 26, 1974.

---

Jeffrey A. Lehmann, of Harris & Graul, Houston, Tex., for plaintiff.

Harry P. Lamberson, of Chapman & Cutler, Chicago, Ill., and Ronald L. Palmer, of Baker & Botts, Houston, Tex., for defendant.

## MEMORANDUM OPINION

NOEL, District Judge.

This cause comes on the motion of defendant Winnebago Industries, Inc. (hereinafter Winnebago) to dismiss Count 3 of the complaint for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Winnebago contends it is not an "automobile manufacturer" as defined in 15 U.S.C. § 1221(a) and therefore cannot be sued under the Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221–1225 (hereinafter the Act).

Plaintiff, River Oaks Motor Homes, Inc. (hereinafter River Oaks), filed its complaint following Winnebago's termination of River Oaks as an authorized Winnebago dealer. Plaintiff's complaint alleges fraud (Count 1), breach of contract (Count 2), violation of the Automobile Dealers' Day in Court Act (Count 3), and violation of § 2 of the Sherman Act, 15 U.S.C. § 2 (Count 4). Winnebago filed an answer, a counterclaim, and its motion to dismiss Count 3. At movant's request, the Court granted an evidentiary hearing on the motion, which was held November 8, 1973. The parties presented witnesses, documentary evidence and oral argument supporting their respective positions.

There appears to be no reported decision on the question whether a recreational vehicle manufacturer comes within the definition of an "automobile manufacturer," 15 U.S.C. § 1221(a).

River Oaks is in the business of buying and selling recreational vehicles called motor homes. River Oaks deals in several lines of motor homes and until August 31, 1972 was an authorized dealer for Winnebago motor homes. The complaint alleges that River Oaks is an "automobile dealer" and Winnebago is an "automobile manufacturer" as those terms are defined under the Act. River Oaks further alleges that in terminating the Retail Sales and Service Agreement with River Oaks, Winnebago acted without cause and in bad faith in violation of the Act, 15 U.S.C. § 1222.

Winnebago manufactures a line of recreational vehicles consisting of motor homes, travel trailers, camper coaches and Kap covers. It also produces certain vehicle components. Of these products, only the motor home is self-motorized. The travel trailer is a mobile dwelling containing living accommodations, mounted on its own chassis and designed to be towed behind an automobile or pick-up truck. The camper coach is a travel trailer without a chassis. The body is built on a wood underframe and is designed to be mounted on the bed of a pick-up truck. The Kap cover is a small cover designed to fit over the bed of a pick-up truck. It provides limited shelter and sleeping accommodations.

The Winnebago motor home is a mobile dwelling with a self-contained power unit, built on a special heavy duty chassis purchased by Winnebago from Chrysler Corporation. The chassis sold to Winnebago is specially designed by Chrysler Corporation engineers and is used only for motor home construction. The motor home chassis bears numerous features unique to it. From a design and engineering standpoint, it differs substantially from chassis built by Chrysler Corporation for use in passenger cars, station wagons and trucks. In addition to the driver's area, the Winnebago motor home contains living accom-

modations including kitchen, dining, sleeping and bathroom areas. The motor home is designed to be used as a temporary dwelling during vacation or camping trips.

Of defendant's products, River Oaks only dealt with motor homes. Plaintiff contends that production of motor homes qualifies Winnebago as an "automobile manufacturer."

The first motor homes were built in the United States in 1958. Winnebago began manufacturing motor homes in 1965. At present there are about two hundred manufacturers of all types of motor homes. Winnebago is the largest manufacturer with approximately twenty percent of the market.

The Automobile Dealers' Day in Court Act authorizes an "automobile dealer" to sue an "automobile manufacturer" for failure to act in good faith in terminating the dealer's franchise. "Automobile manufacturer" is defined as . . .

. . . . any person, partnership, corporation, association, or other form of business enterprise engaged in the manufacturing or assembling of passenger cars, trucks, or station wagons, including any person, partnership or corporation which acts for and is under the control of such manufacturer or assembler in connection with the distribution of said automotive vehicles. 15 U.S.C. § 1221(a).

Unless a Winnebago motor home comes within the definition of a "passenger car, truck or station wagon," Winnebago is not an "automobile manufacturer" and accordingly, cannot be sued under the Act.

■ It does not appear that any court has construed the statutory words "passenger cars, trucks or station wagons" in the context of the Act. Nor are such terms defined in the statute itself. Absent a controlling statutory definition, a court should not depart from the plain meaning of statutory language. United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 96, 5 L.Ed. 37 (1820).

The Court concludes that the language "passenger cars, trucks and station wagons" does not include motor homes. A passenger car is a self-propelled motor vehicle containing a front or a front and rear seat and designed primarily to transport passengers. A truck is a self-propelled motor vehicle designed primarily to haul freight or cargo. A station wagon is a self-propelled motor vehicle with no luggage compartment and with rear seats which lift out or fold down to provide cargo space. It is designed primarily for transportation of passengers, light cargo or both.

A motor home is a self-propelled vehicle which contains complete living facilities, including kitchen, dining, sleeping and bathroom facilities. It is designed not only to transport passengers but also to house them on a temporary basis.

■ No definition of a truck includes a vehicle designed primarily to house and transport human beings, such as a motor home. Frank Motor Homes, Inc. v. United States, 230 F.Supp. 782, 784 (E.D.Mich.1964), aff'd 354 F.2d 660 (6th Cir. 1965). Similarly, no reasonable definition of either "passenger car" or "station wagon" includes a motor home. A motor home is built on a specially designed heavy duty chassis; it lacks the usual front and back seats of a passenger car, is larger in size, and again, it is designed not only to transport passengers but to house them temporarily. The Court concludes that a motor home is not embraced within the ordinary meaning of the statutory language "passenger car, truck or station wagon."

■ Plaintiff argues that motor homes are a hybrid of passenger cars, trucks and station wagons and should be included by analogy. However, the Act's legislative history demonstrates congressional intent to *exclude* manufacturers of arguably similar vehicles.

The broadly declared purpose of the Act was to supplement the antitrust laws to balance the power between auto-

mobile manufacturers and their dealers by creating a cause of action in favor of dealers for the failure of the manufacturers to act in good faith in complying with the terms of the franchise agreement and, specifically, in the termination or non-renewal of the agreement. See H.R.Rep.No. 2850, 84th Cong., 2d Sess. (1956), quoted, 1956 U.S.Code Cong. & Admin.News, p. 4596 (1956). The automobile industry had been the object of special congressional concern for many years prior to 1956 due to its great importance to the national economy, its increasing tendency toward concentration, and growing criticism from dealers and the public concerning its marketing practices.

The automobile industry and its marketing practices were thoroughly investigated by the Federal Trade Commission and various congressional committees. Subsequent to these investigations, various proposals for legislative action were submitted to Congress, including S. 3879 which eventually became the Act.

The legislative history reflects a congressional decision to limit coverage to the automobile industry, the subject of the investigations. Proposals were offered to cover all industries employing the dealer franchise method of marketing. These suggestions were rejected because of the lack of investigation and absence of proof of abuse in other industries. Hearings on S. 3879 Before the Antitrust Subcommittee of the House Committee on the Judiciary, 84th Cong.2d Sess. at 473 (1956); 102 Cong. Rec. 14077 (1956) (remarks of Representative Rodino).

More significantly, the original Senate version of the bill covered manufacturers of "passengers cars, trucks, station wagons *and other automotive vehicles.*" (Emphasis added.) The final words

were stricken by the House Committee on the Judiciary:

> . . . . in order to limit the bill's coverage to manufacturer-dealer transactions involving the distribution of passenger cars, trucks, and station wagons. *The amendment, therefore, excludes transactions involving buses, tractors, motorcycles, and other transportation vehicles propelled by power.* This accomplishes two purposes: First, it avoids any ambiguity resulting from use of the phrase "or other automotive vehicles"; second, it restricts the bill to those areas of automotive distribution in which congressional committees have ascertained a present need for remedial legislation. (Emphasis added.)

H.Report 2850, supra, quoted in 1956 U.S.Code Cong. & Admin.News at p. 4601 (1956). The final statute also excludes the words.

Thus, the Congress expressly considered including manufacturers of buses, tractors, motorcycles, and other motor vehicles within the purview of the Act. These arguably analogous industries were purposefully excluded from reach of the statute. Judicial construction of the Act should be consistent with this narrow congressional intent. See United States v. Irick, 369 F.Supp. 594 (S.D. Tex.1974). The Act cannot be fairly read to include manufacturers of motor homes.

Accordingly, because Winnebago Industries, Inc. is not an "automobile manufacturer" as defined in 15 U.S.C. § 1221(a), it cannot be sued under 15 U.S.C. § 1222. Therefore, defendant's motion must be granted, and Count 3 of plaintiff's complaint dismissed.

The Clerk shall file this Memorandum Opinion and furnish a copy to all counsel.